This is our third case of the morning, 4-0-9-0-1-5-9, People of the State of Illinois v. Jamal Williams. For the appellant, Ms. Hannigan, for the appellee, Mr. Goedege, you may proceed. Ann Hannigan May it please the court, my name is Ann Hannigan and I'm here today on behalf of defendant Jamal Williams. I'd like to start with the sufficiency of the evidence and some of the inconsistencies in the testimony. The main victim in the case, Mr. Rigdon, stated that four men came into his garage and pounced on him. He said they were all wearing black masks. He said, quote, I heard a noise and turned around and four hooded masked people came running in and just literally attacked me. I mean, I didn't have a chance to think or do anything else. They just, you know, pounced. He said a total of four people came in and they were all masked. Mrs. Rigdon backed up his testimony and said they were hooded and that she couldn't see their faces. One of the state's key witnesses, Isaiah Evans, stated that Nazir and Chad Todd were supposed to come in after Isaiah and the defendant Jamal. They were all wearing black masks and black hoods, black clothing. Isaiah said that Jamal was the first one in the garage and that he hit Mr. Rigdon. Chad and Nazir were the first ones to leave the house with loaves, cards, and check stubs. Isaiah admitted on the cross that he expected leniency for his testimony, that Chad was the leader, and that he was wearing Michael Jordan shoes. There was a Michael Jordan footprint found at the scene and that was blamed on the defendant, Jamal Williams. He was also wearing Michael Jordan shoes. The state's key witness, Chad Todd, said he hoped for leniency. He didn't know who came up with the idea, even though Isaiah said that he was the leader. When asked who entered the home with him, he said it was Isaiah, Nazir, and Jamal and him. The four of them came in together. The purpose was to get the combination of the safe to the Rigdon's currency exchange. According to Chad, Jamal and Isaiah ran into the garage, and now here's where he changes his testimony in the next second. He says he and Nazir drove around the block, that I waited 10-15 minutes when they called my phone and told him to come in. It's a complete contradiction of a former statement that all four of them went in at once. The front door was open, he said, and the garage door was closed. He was not sure if it was Isaiah or Jamal who had something in his hands. They wanted the combination of the safe to the Rigdon's currency exchange. Now the state, in closing, misled the jury by saying that the testimony was entirely consistent. The state said, quote, because it's Jamal Williams who charged into that garage and strikes Mr. Rigdon over the head repeatedly with a gun, while Isaiah Evans is fumbling with the garage door, it's Jamal Williams who's pushing his way into the house, the door into Mrs. Rigdon's face. He may not be the one who put a gun in Mr. Rigdon's face later and threatened his life to get the information on the currency exchange. But he struck and took down Mr. Rigdon. Mr. Rigdon heard the sound and opened the door. The testimony of Ares McNutt and Chad Todd and of Isaiah Evans is in whole consistent, this is what the state argued to the jury. It is on the whole very consistent as to how these offenses occurred, when they occurred, and in what order they occurred. You have the consistencies of their testimony, but more than that, you have the consistencies in what they described with the statements made to you by Mr. and Mrs. Rigdon as to what happened to that night, to them that night. In other words, Rigdon saying, once these people were in my house, I was aware of four young men in my house. Okay, that right there, their testimony was not consistent with what the Rigdon stated. Mr. Rigdon stated four men came in at once and they literally pounced on him. The defense counsel in closing stated, Mr. Rigdon said that he saw possibly four individuals, that the individuals were all masked, there was no way you could tell who was who, or no way you could identify any one of these people. The number one victim in this case, Mr. Rigdon, was not able to identify anyone. He did interestingly note that one of the attackers had long arms and was tall. Defense counsel further stated that Jamal Williams was not 6'5", that he did not have long arms, and that he would not consider to be tall. In sentencing, the judge stated Mr. Williams was one of the persons who brought a gun that night, and he was the person who ran into the garage and struck Mr. Rigdon. She gave him consecutive sentences totaling 75 years, whereas Chad and Isaiah, who testified against him, only got 25 years, which is one-third of Jamal's sentence. And I want to note here that Chad Todd, before his sentence, called the residence of the trial attorney, Duke McNeil, and he spoke with Mr. McNeil's caregiver, Tina Kendricks. Tina Kendricks then related to me that Chad Todd told her that he and Isaiah got together and decided to point the finger at Jamal Williams. Is this in the record? No, I'm saying this as sworn under oath. Well, we can only review the record, and I'm not discounting whether or not such a conversation occurred, but we can only review what was before the trial court. And I take it that you're now asserting that that was not before the trial court? No, it happened during the pendency of this appeal. That is not, we can't accept new testimony or new evidence. That may be a basis for some further review in the trial court. I'm not sure of that, but we can only review the record of what occurred at the trial, what the witnesses testified to, what occurred at the sentencing, and the issues that you've identified for appeal. Okay, so that would be appropriate for a post-conviction petition. It's not for me to suggest whether it would be or not, but it would have to be reviewed elsewhere other than in this appeal. Okay, thank you, Your Honor. Secondly, I want to talk about ineffective assistance of counsel. Counsel failed to put on a meaningful adversarial defense. He put on an alibi defense, he failed to investigate or call any new, any alibi witnesses. Like who would have been an alibi witness that he could have called? Because didn't your client testify that he was home, he went to school, he came home around 2, he worked out, and he was in his apartment after that by himself apparently, watching TV and studying. Well, I'm presuming, you know, if he could have called somebody or somebody saw him at the health club, but none of that was investigated. He was at the health club at 2 o'clock, and what time did the offense occur? In the evening. Right, so how would that help him, to call somebody from the health club, because maybe he did go to the health club when he got home from school, but the offense occurred close to dusk. Well, the point is his lawyer didn't even make any attempt to investigate. Well, does he at this stage either? I'm sorry, your honor? He doesn't at this stage either say, here's what I could have proven. This person at the health club could have said this. Well, that's true. He says nothing. That's true, but I really feel that his trial counsel didn't put on a meaningful adversarial defense for him, and that this court should consider remanding for a new trial. Thirdly, the sentence is entirely improper. He received consecutive sentences of 75 years, which is entirely incongruous with what Chad and Isaiah received, which was 24 years. This was a single course of conduct, to break in and obtain a combination to the safe of the currency exchange. And I want to point the court's attention to the case of People v. Davis, on page 36 of my brief, where the goal was criminal sexual assault, but the defendant was convicted of residential burglary and home invasion, and he received consecutive sentences, which on appeal were made concurrently. This court has the power to vacate the consecutive sentences and make them concurrent, and remand for a new sentencing with a different judge. I thought it was mandatory consecutive. Well, then we would ask that it be remanded for a new sentencing hearing before a different judge. Because his sentence is entirely incongruous with what Chad and Isaiah received, 25 years. Did you write that in your brief? Yeah. This is a 20-year-old kid who got 75 years, which is a life sentence. I said in the brief that they both testified in exchange for leniency. I don't know if I actually put in the 25 years, which is what they got. I don't recall ever seeing anything or any argument that it was disproportionate. Okay. Well, it was because while I was writing the brief, they hadn't yet been sentenced. Okay, so that's not in the record either, and not argued in your brief on appeal. That there was a disproportionate dispensation of sentence. If they hadn't been sentenced when you wrote the appeal, right? Right. Okay. But he's a 20-year-old kid going to college. He was trying to start a new life. He received a 75-year sentence, which is, in essence, a life sentence for this young man. And the testimony is entirely inconsistent. There's no way of knowing who attacked Mr. Rigdon. Mr. Rigdon doesn't know. Chad says he was driving around the block. Isaiah says they all went in at one time. Mr. Rigdon said they all went in at one time, and they just pounced on him. So I would ask this Court to either remand for a new trial or reverse for a new sentencing with a different judge. Thank you, Your Honor. Thank you, Counsel. Mr. Dornigan. May it please the Court, Ms. Harrigan. In terms of defendant's inconsistent testimony statement, without trying to go through any detailed analysis of it, let me just state to the Court, of course, that resolution of inconsistencies in testimony is a matter for the prior fact, and in this case, the jury. As far as the sentencing is concerned, the statute involves 5-5-5-8-4. It does require mandatory consecutive sentences under certain circumstances. One of those circumstances is when the offenses are class X felonies and when there is severe bodily injury or severe bodily harm. In this case, of course, class home invasion and armed robbery are class X felonies, and the trial court did make the finding of severe bodily harm in regards to Mr. Rigdon. Mr. Rigdon had been struck five times approximately with a pistol or other item, which caused substantial lacerations to his head, also resulted in short-term memory loss, and he had recurring pain, so that under the statute, consecutive sentences were mandatory. That concludes my oral statement. I'm, of course, available for questions. Mr. Doherty, you conceded, even though the defendant didn't raise the issue, that there's a problem with all of the sentences being entered on all of these offenses. Yes, I did. Would you like an explanation? No, that's fine. I'd like you to address it, at least. I mean, ultimately, even with your concession, it doesn't necessarily make sense. It's related to the two convictions for home invasion and then the resultant 50-year sentence, which at least I construed as being a jurisdictional problem, and therefore something that I should appropriately bring to the court. I'll leave it up to this court, of course, whether it accepts that. Thank you, Mr. Doherty. We have a rebuttal, Ms. Yannick. Jamal Williams was a 19-year-old college student when this event took place. All the assailants were wearing black ski masks. The testimony is conflicting as to who entered the garage and attacked Mr. Rigdon. The three other assailants all made a deal for leniency and pointed the finger at Jamal Williams. Jamal never received a defense of any kind from his trial attorney. The trial judge gave him 75 years, which is a life sentence, to a 19-year-old boy. What about Ms. McNutt? I'm not aware of what sentence she received. I don't see her as being charged. Was she charged with any offenses? I just know that she testified. Her testimony would contradict everything that your client testified to. But she's not someone who is a co-defendant and received leniency. She places him at the Dairy Queen. She places him at St. Joseph. She places him in the company of the other individuals who you've suggested are pointing the finger at your client. She's not in the same position as these other witnesses. Right, but she doesn't know who went into that garage and hit Mr. Rigdon. I agree, yes. Today, Jamal Williams' grandmother, Wayetta Frazier, is fasting and praying with the two ministers. He has a loving and supporting family who are waiting for his release. This verdict and sentence is unconscionable and should be vacated and remanded for either a new trial or a new sentencing with a new judge. Thank you, counsel. We take the matter under advisement.